UNITED STATES DISTRICT COURT          ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
HECTOR MENDEZ,

                    Plaintiff,          MEMORANDUM AND ORDER

       -against-          09-CV-4798 (JG)

MICHAEL J. ASTRUE, Commissioner
of Social Security,

                  Defendant.
----------------------------------------------------------------x
A P P E A R A N C E S:

        HECTOR MENDEZ
                42 Saint Felix Street
                Brooklyn, New York 11217
                *Plaintiff* pro se

        LORETTA E. LYNCH
                United States Attorney
                Eastern District of New York
                271 Cadman Plaza East
                Brooklyn, New York 11201
        By:   Candace Scott Appleton
                *Attorney for Defendant*

JOHN GLEESON, United States District Judge:

        Hector Mendez seeks review, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), of

the Commissioner of Social Security's denial of his application for disability benefits.  The

Commissioner moved for judgment on the pleadings, and I heard oral argument on May 7, 2010.

Because the Commissioner's decision is supported by substantial evidence in the record, I grant

his motion.

        On February 29, 2008, Mendez applied for Supplemental Security Income,

alleging that he had been disabled since June 15, 2006 as a result of infection with the HIV

virus.[1]  His claim was denied on June 30, 2008.  Mendez requested a hearing before an

administrative law judge (ALJ), and he appeared and testified without counsel at a hearing on

June 29, 2009.  On July 10, 2009, the ALJ concluded that Mendez was not disabled within the

meaning of the Social Security Act because he retained the residual functional capacity to

perform the full range of light work as defined in 20 C.F.R. § 416.967(b).  The Social Security

Appeals Council denied Mendez's request for review on September 18, 2009, thus making the

ALJ's adverse decision the decision of the Commissioner.  *See DeChirico v. Callahan*, 134 F.3d

1177, 1179 (2d Cir. 1998).

## BACKGROUND

A.      *The Plaintiff's Statements and Testimony*

Mendez was born in 1966.  After graduating from high school in 1984, he worked

as a messenger for about a year.  He later took classes in computer programming and data

processing and worked in related fields for a few years.  In 1993, he left his job to pursue a

degree at a two-year institution; he eventually earned a bachelor's degree from a four-year

institution in 1998.  Between 2002 and 2004, Mendez worked as a speech therapist at a school.[2]

In that job, Mendez spent most of the day walking or sitting and frequently lifted up to 25

pounds.  From 2005 until mid-2006, Mendez worked as a counselor and sign language instructor

at a YMCA, a job that required him to walk, stand, sit, and frequently carry or lift objects, such

as sports equipment, that weighed up to 10 pounds.  Mendez has not worked since he lost that

job on June 15, 2006, when the YMCA closed.  Mendez lives alone and performs his own

household tasks, such as cooking, cleaning, and grocery shopping.  He travels by public

---

[1]       Although the Social Security Administration received Mendez's benefits application on March 3,
2009, the application was assigned a protective filing date of February 29, 2008.  *See* Def. Br., at 1.

[2]       Mendez lists conflicting dates in the employment history he submitted as part of his application
for benefits.  In another section of the application, Mendez writes that he worked as a speech therapist from 1999 to
2003.

transportation and bicycle, walks his dog, and socializes twice weekly. He also regularly attends an outpatient program for recovering drug addicts.

Mendez was diagnosed with HIV in 1996. As a result, he testified, he is easily fatigued and must take medications that cause him to feel nauseous. Although Mendez claims he has been disabled since his diagnosis, he stated in questionnaires submitted as part of his application for benefits that he stopped working in 2006 because the YMCA closed and that he "really did not have a problem working from 1996 through 2006." At the hearing, Mendez acknowledged that he "could work at a job sitting a desk answering the phone, taking messages" or "observ[ing] people walking in and out of a building," but said that, even if he could get such a job, he would leave it because he could not make a living doing that type of work.

B.    *Medical Evidence*

Mendez received treatment at St. Luke's-Roosevelt Hospital for HIV from 2001 to 2005. On December 18, 2001, he was seen by Dr. Hannah Wolfe, who described him as "tense" and "dysthymic" and noted that his HIV had been diagnosed as asymptomatic since April of 1998. On July 24, 2002, Mendez was seen by Dr. Abigail Zuger. She described him as "feeling well," and noted that he was not then taking antiretroviral medication for HIV and that he had "no significant past medical history." Zuger saw Mendez again on July 9, 2003, and again described him as "feeling well." On August 18, 2004, Zuger saw Mendez after laboratory tests indicated an increase in his viral load. Mendez resumed taking antiretroviral medications and returned to Zuger on September 8, 2004 for a follow-up visit, at which time she opined that he was "clinically stable." On September 29, 2004, Zuger described Mendez as "clinically stable with good response to ARV [antiretroviral] re-institution," but noted that he complained that one of the antiretroviral drugs was causing diarrhea. On October 27, 2004, Mendez saw Zuger for

treatment of a buttock abscess.  Suspecting that the abscess was a result of a bacterial infection, Zuger recommended antibiotics.  She also reported that there had been a "99% drop in viral load" with antiretroviral therapy.  By December, Mendez's abscess had healed and he was no longer suffering from diarrhea.

On March 4, 2005, Zuger saw Mendez for a routine visit.  She noted that he had asked her to complete a form certifying him as permanently physically disabled so that he could qualify for reduced transportation fares and deferral of his student loans, but that she had refused because he had no physical symptoms of HIV.[3]  She recommended a mental health evaluation for his feelings of stress, but noted that he had repeatedly declined mental health referrals. Mendez saw Zuger twice more, last visiting her in April of 2004.  During these visits, she generally described his HIV as asymptomatic but noted that he had been failing to take his medication as directed, either missing doses or taking it with food.

In July of 2005, Mendez began seeing Dr. Alison Schachter of Gouverneur Hospital every three months for HIV treatment.  In disability reports dated June of 2009 and submitted in connection with Mendez's application for benefits, Schachter described Mendez's response to antiretroviral drug treatment as "excellent" and opined that HIV did not limit his ability to perform work-related physical or mental activities.

On June 19, 2008, Dr. Jamshid Sheikh performed a consultative examination of Mendez upon referral by the Division of Disability Determinations of the New York State Office of Temporary and Disability Assistance.  Sheikh reported that Mendez described "some fatigue" but denied "any other day to day issues related to his HIV," and that Mendez claimed that his

---

3.      Zuger refers to a "Letter written for student loan deferral" in her notes for the March 23, 2005 appointment, but no further detail about the contents of the letter, including whether she opined as to any physical or mental disability of Mendez, is contained in the record.

viral load was undetectable when it was checked in April of 2008. Sheikh did not detect any physical limitations during his examination.

DISCUSSION

A.    *The Standard of Review*

        To be found eligible for disability benefits, Mendez must show that, "by reason of any medically determined physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months," 42 U.S.C. § 423(d)(1)(A), he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy," *id.* § 423(d)(2)(A).[4] On review, the question presented is whether the Commissioner's decision to deny Mendez benefits is supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

        The Social Security regulations direct a five-step analysis for evaluating disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in

---

        4.      Work may be substantial even if it is not full-time or if it generates less income or carries less responsibility than previous employment. 20 C.F.R. § 404.1572. Work is gainful "if it is the kind of work usually done for pay or profit, whether or not profit is realized." *Id.* Activities such as household tasks, hobbies, therapy, school attendance, club activities, or social programs are generally not considered to be substantial gainful activity. *Id.*

Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform."

*DeChirico*, 134 F.3d at 1179-80 (internal quotation marks omitted); *see also* 20 C.F.R. § 404.1520.  The claimant bears the burden of proof in the first four steps, the Commissioner in the last.  *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).

B.    *Analysis*

The ALJ followed the five-step procedure outlined above.  He determined that Mendez had not engaged in substantial gainful activity since February 29, 2008, the date of his application for benefits, and that he had a "severe impairment," asymptomatic HIV, which, though not a "listed" impairment, left him without the residual functional capacity to perform his previous work as a counselor, sign language teacher, and speech therapist.[5]  At the fifth step, the ALJ concluded that Mendez was not disabled under the Social Security Act because he retained the residual functional capacity to perform the full range of "light work."  *See* 20 C.F.R. § 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.").

---

    5.    HIV alone is not a "listed" impairment; to be classified as a "listed" impairment, it must be accompanied by specified symptoms such as opportunistic bacterial or viral infection or malignant neoplasms.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing 114.08).

Mendez, who did not submit an opposition to the Commissioner's motion for judgment on the pleadings, has not directed my attention to any specific errors of fact or reasoning in the ALJ's decision. Nor, having reviewed the record, did I discover any. No treating or consulting physician opined that Mendez was unable to work as a result of HIV, or, indeed, that the disease, properly managed, was significantly limiting his physical or mental capacity. Mendez himself admitted that the primary reason he stopped working in 2006 was because his workplace closed, and that, although easily fatigued, he is capable of working as a receptionist. His admissions are consistent with his other statements that he readily takes care of his own household needs, including cleaning and grocery shopping, rides public transportation, walks his dog, and regularly socializes with friends. Accordingly, I find that substantial evidence in the record supports the Commissioner's denial of Mendez's application for disability benefits.

CONCLUSION

The Commissioner's motion for judgment on the pleadings is granted.


So ordered.

John Gleeson, U.S.D.J.

Dated: June 1, 2010
        Brooklyn, New York